CHANDLER, Appellant, vs. HERMAN and another, Respond-
.ents.

*September 10 — September 28, 1897.*

*Appeal: Findings supported.*

In a case where there is evidence strongly tending to support the
finding of the court, and no preponderance of evidence against it,
the judgment will be affirmed.

APPEAL from a judgment of the superior court of Milwau-
kee county: J. C. LUDWIG, Judge. *Affirmed.*

The facts are fully stated in the opinion.

For the appellant there was a brief by *Miller, Noyes, Mil-
ler & Wahl,* and oral argument by *B. K. Miller, Jr.*

For the respondents there was a brief by *Quarles, Spence
& Quarles,* and oral argument by *Chas. Quarles.*

PINNEY, J. This action was brought to charge the de-
fendants in the sum of $10,000, the amount of certain notes
and interest thereon owned by the plaintiff, and secured by
a mortgage in which they were trustees for the plaintiff,
upon the ground that they had improperly discharged the
mortgage, whereby the plaintiff lost the amount secured by
said notes. The Gothenburg Waterworks & Investment Com-
pany had executed a mortgage to the defendants to secure
eighty $1,000 notes, only sixty-nine of which had been issued.
The plaintiff owned ten of these, which he had purchased
before maturity, for value. November 1, 1891, the defend-
ants, as trustees of the mortgage, released and satisfied it of
record, whereby the plaintiff lost his security. In October,
1891, a new corporation was formed, known as the Gothen-
burg Water Power & Investment Company, to which the
first company conveyed its property, including the mort-
gaged real estate. July 1, 1893, this second company mort-

gaged its property, including the real estate so previously mortgaged and first mentioned, for $157,000. The original company was insolvent, as was company No. 2, and in March, 1894, a receiver was appointed of the latter company. The defendants insisted upon these defenses, namely: Consent of the plaintiff that they should satisfy the mortgage; that he was estopped from questioning the rightfulness of the discharge; and that the plaintiff was barred by reason of laches from any recovery.

Upon these issues the plaintiff testified that it was "early in the spring of 1895 that he first learned that the mortgage securing these notes had been satisfied by the defendants; . . . the satisfaction of the mortgage was not done by my consent;" that they told him the mortgage was worthless, and he inquired and found out that it had been satisfied of record; that some of them told him it had been released, and he went to Mr. Hoyt about it first, and afterwards to Mr. Quarles, who told him it had been released, and he supposed *Mr. Herman* had authority; that he then went to *Herman*, who told him that Mr. Brand had told him, "I had consented to release it;" that he did not pay any attention to that part of it, but had left that part of it to Mr. Brand; that, as a matter of fact, he never told Mr. Brand, *Mr. Herman*, or Mr. Hoyt that he consented that they might release the mortgage; that he told Quarles and *Herman* he had never consented to it, and did not know anything about it; that he told Brand the subject was never broached to him in any form, and he could not remember at the time that it ever had been, and he said he did not remember definitely, but said: "You must have done so." A consent to the satisfaction of the mortgage, dated October 22, 1891, contains the signatures of every one but the plaintiff, *Chandler.* He testified that this document was not presented to him for signature; that the facts were not brought to his attention, nor was he asked to consent

to any such agreement before April, 1895.   In May and
July of 1892, the plaintiff loaned to the Gothenburg Water
Power & Investment Company the sum of $30,000, and,
as security for said sum, took a mortgage upon certain of
the real estate of said corporation, and also took certain
stock of the company, and received certificates therefor,
which had been issued in the name of one Brand as trustee,
and were signed by him as such, with written options to pur-
chase the said stock, which certificates are still in the hands
of the plaintiff.   When it was contemplated that the water
power and investment company should issue the $157,000
trust deed mentioned, plaintiff signed a written agreement,
agreeing to take the bonds secured by such mortgage to the
amount of $30,000, and stipulated in and by such agreement
that the said bonds should be secured by first mortgage upon
all the property of said corporation, except about $40,000
worth thereof, already mortgaged to the plaintiff, together
with other real estate.   The plaintiff did accept the said
$30,000 of bonds, secured by said $157,000 mortgage, which
was expressed to be a first mortgage on all the property
owned by the said water power and investment company,
including the property covered by said mortgage of January
20, 1891.

Mr. Brand testified that he was deputed to obtain *Mr.
Chandler's* signature to the consent to the satisfaction of the
first mortgage, but he failed to find him, and advised the
parties interested that *Chandler* " would sign anything that
was proper to carry through the arrangement."   Hoyt tes-
tified that *Chandler* at one time said he had already lost
$10,000 of his debt by the surrender of the mortgage secu-
rity he had, and he understood him to refer to the $10,000
released.   The defendant *Herman* testified that he released
the mortgage because *Mr. Chandler* stated that " if we all
thought it was a good thing, he didn't know why it wouldn't
be a good thing for him, and that he would be willing to do

as we would do;" that after that he (*Herman*), in connection with Mr. Hoyt, released the mortgage. It appears that, after the release of the mortgage, the plaintiff took another mortgage, which covered the Belvedere Block, in Milwaukee, and also property in Nebraska which the prior mortgage had covered, and that this last mortgage purported to be a first mortgage. *Mr. Chandler* also testified that he relied upon the security of the Belvedere Block, and did not know what the other property was. The action was brought in June, 1895, and the plaintiff testified that he never knew of the release until early in that year.

Mr. Brand testified that, a day or two before the parties came to finally close up contracts and join in the organization of the power company, the release of mortgage was given to him to get *Mr. Chandler's* signature; that he endeavored to meet him, but did not succeed, and, when they were at the meeting that day, it was necessary to have this paper; that he returned it then to the defendant *Herman* or some one present, and stated that he had not been able to find *Mr. Chandler*, but that he had said he would join in anything that was requisite, and that he would sign anything that was proper to help carry through the arrangement; that he was told he was then out of town, and he remembered of his being in a number of times in regard to this matter; that his attention was called a few days afterwards to the fact that *Mr. Chandler* had not come in to sign the paper; that he saw him, and he said he would come into *Mr. Herman's* office, and sign the paper, the release or authority; that that was within a few days after it occurred; that he happened to meet him once afterwards, and that *Chandler* told him he had been into *Herman's* office, but had not found anybody in, and would go again; that he dismissed the thing from his mind, on the supposition that it was done, and never knew it was not signed until about the time that suit was commenced.

There was considerable other testimony in respect to the acts and conduct of the plaintiff, and the circuit court found that the trustees released the said mortgage, and that the release was made and executed pursuant to the written consent, signed by the holders of fifty-nine notes, and the verbal consent thereto made by the plaintiff, and that the purpose and intent of the parties holding said notes, and of all persons interested therein and in the property covered by the mortgage, in authorizing the release of and releasing the said mortgage, was to relieve the property described in the said mortgage from all liens, and convey the same to a new corporation which was then organized under the name of the Gothenburg Water Power & Investment Company, and the substitution of the stock of the said last-named corporation as security for the debts of said Gothenburg Waterworks & Investment Company, in lieu of the said trust deed or mortgage and other securities. After and about the date of the release of the said mortgage, the property of the said Gothenburg Waterworks & Investment Company was conveyed to the Gothenburg Water Power & Investment Company, and at two different times the plaintiff loaned the said water power and investment company $30,000, and, as security for the first loan of $30,000, took a mortgage upon certain of the real estate of said corporation and certain of the stock of the said water power and investment company, as hereinbefore stated.

As a conclusion of law, the court found that the plaintiff consented to and authorized the release of the mortgage bearing date January 20, 1891, and thereafter acquiesced therein, with knowledge that the same had been released, until the spring of the year 1895; that, in releasing said mortgage, the said defendants did not, nor did either of them, violate any duty as trustees under the said trust deed or mortgage; and that the defendants should have judgment

herein dismissing the complaint on the merits, and for costs; and judgment was entered accordingly, from which plaintiff appealed.

The testimony of witnesses as to facts and circumstances bearing upon the vital point, namely, whether the plaintiff in fact consented to a release and satisfaction of the mortgage, and authorized the defendant trustees to execute such release, is quite elaborate, and appears to have been given by witnesses in open court. It is not practicable to set out the same more particularly or at length. The conclusion and finding of the court upon this point rest upon inferences drawn from these facts and circumstances, the business relations and relative interests of the parties consenting to such release, and the fact that they had, if not an identity, yet a similarity of interests, and were in a considerable degree in business sympathy with each other. The condition of the property covered by the mortgage appears to have changed frequently, to the knowledge of the plaintiff, and it would seem reasonable, in view of his interest and business relations to the parties, that he must have been cognizant of, or fairly chargeable with notice of, these transactions, if not an actual participant in them. The testimony shows that after the release of the mortgage in October, 1891, he gave no particular attention to his ten bonds, or the enforcement of them, and made no inquiries on the subject until the spring of 1895. His conduct during the years succeeding October, 1891, is quite consistent with the theory that he had consented to the release, and acquiesced therein. The trial court had advantages for forming a correct conclusion which this court cannot possess, it having heard the testimony of the witnesses. There is evidence strongly tending to support the finding. There is certainly no preponderance against it; and, under the familiar rule upon the subject, it is plain that this is a case where we would not be warranted

in disturbing the finding of the trial court. For these rea-
sons, the judgment of the superior court of Milwaukee
county must be affirmed.

*By the Court.*— The judgment of the superior court of
Milwaukee county is affirmed.